Charles "Dee" Hopper, Esq. (NV Bar No. 6346)
Sergio Salzano, Esq. (NV Bar No. 6482)
LYNCH, HOPPER, SALZANO & SMITH, LLP
1640 Alta Drive, Ste. 11
Las Vegas NV 89106
Telephone: (702) 868-1115
Facsimile: (702) 868-1114
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ADAM SCHWARTZ, individually and on behalf of all others similarly situated, | Case No: 2:15-cv-1980 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, | |
| Defendants. | |

## <u>COMPLAINT</u>

COMES NOW Plaintiff, Adam Schwartz, an individual, individually and in his representative capacity; VOLKSWAGEN DRIVERS 1 - 50,000, individually and as Class Members, and hereby complain, allege and state as follows:

*///*

*///*

1

# I.

## INTRODUCTION

1.      Plaintiffs intend to seek, pursuant to FRCP 23(b)(3), certification of a class for damages and other relief on behalf of all similarly-situated persons or entities residing in Nevada that have suffered loss or damage as a result of purchasing or leasing automobiles manufactured and or distributed by Volkswagen Group of America, Inc. (hereinafter "Volkswagen") under their brand name of Volkswagen or Audi in which Volkswagen installed a defeat device, more specifically, a sophisticated software algorithm designed to deceive emissions testing.

# II.

## PARTIES

2.      Adam Schwartz, hereinafter "Plaintiff", is a resident of North Las Vegas, Clark County, Nevada.  In January 2015, Plaintiff purchased a new 2015 turbo diesel injection (TDI) Volkswagen Jetta at Findlay North Volkswagen in Las Vegas, Nevada.  In June 2013, Plaintiff also purchased a pre-owned 2010 turbo diesel injection (TDI) Audi A3 at Prestige Chrysler Jeep Dodge in Las Vegas, Nevada.  Unbeknownst to Plaintiff, the vehicles contained a defeat device designed to bypass emissions standards and deceive consumers and regulators, and the vehicles could not deliver the advertised combination of low emissions, high performance, and fuel economy.

3.      Plaintiff, Adam Schwartz, is among those who were deceived and cheated by Volkswagen, and who purchased or leased a vehicle based on Volkswagen's

misrepresentations or omissions.   He brings this action individually, as a class representative, and on behalf VOLKSWAGEN DRIVERS 1-50,000, the proposed "**Class Members**" being Nevada residents who relied on Volkswagen's misrepresentations and omissions and purchased or leased a Class Vehicle (as defined in Paragraph 29 herein).

4.      Class Members 1-50,000, whose identities are presently unknown, are the subject of ongoing discovery, and are therefore suing under fictitious names.  Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities as they are ascertained if the Court declares that they are required to be substituted as proper parties or real parties in interest.  Hereinafter, Individual Plaintiff, Adam Schwartz, and the proposed Class Members, VOLKSWAGEN DRIVERS 1-50,000 may be collectively referred to as "**Plaintiffs**".

5.      Plaintiffs are informed and believe, and thereon allege, that Volkswagen is/was responsible for the design, development, testing, manufacture, distribution, supply, marketing, sale, leasing and warranting of vehicles subject to this class action. (See Paragraph 29 below for a more detailed description of Class Vehicles.)

6.      Volkswagen (hereinafter "**Volkswagen**" or "**Defendant**") is a Corporation doing business in all 50 states and is organized and incorporated under the laws of New Jersey.  Its principal place of business is located in Herndon, Virginia. Volkswagen is a citizen of New Jersey and Virginia. 28 U.S.C. §1332(d)(10).

/ / /

7.    At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Volkswagen and Audi brand names and created and distributed the manuals, advertisements, and other promotional materials relating to the Class Vehicles.

### III.

### JURISDICTION AND VENUE

8.    Plaintiffs bring this action pursuant to the authority granted by Federal Rule of Civil Procedure 23 (hereafter, "Federal Rule 23").

9.    Pursuant to the authority granted by Federal Rule 23, Plaintiffs have standing to bring all of the claims set forth in this Complaint on behalf of themselves and as representatives of the class of similarly-situated persons or entities residing in Nevada who purchased or leased a Class Vehicle.

10.    This Court has jurisdiction over the subject of this matter pursuant to 28 U.S.C. §1332(d)(2)(a) because it is a class action in which Plaintiff and other members of the proposed class are citizens of Nevada, a state different than Defendant's home states, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.    This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because Plaintiffs are Nevada residents and all defendants reside outside Nevada, and the value of the claim here exceeds $75,000.    This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in and purchased his Class Vehicle from a dealer in this District. Moreover, Volkswagen conducts substantial business in this District, has marketed, advertised, sold, and leased the Class Vehicles in this District, and has caused harm to Class Members residing in this District.

**IV.**

**CLASS ACTION ALLEGATIONS**

12.    A class action is alleged pursuant to Federal Rule 23. The proposed class is defined as all persons or entities residing in Nevada who purchased or leased a Class Vehicle as previously defined herein.

13.    Excluded from the Class are (a) Volkswagen, any entity or division in which Volkswagen has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (b) the Judge to whom this case is assigned and the Judge's staff; (c) governmental entities; and (d) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

14.    Plaintiff, Adam Schwartz, is among those who were deceived and victimized by Volkswagen and who purchased and/or leased a Class Vehicle based on Volkswagen's misrepresentations and omissions. He brings this action

5

individually and on behalf of a Class of Nevada residents who purchased or leased a Class Vehicle (the "Class Members").

15.     This action satisfies the numerosity, commanality, typicality, adequacy, predominance and superiority requirements of Federal Rule of Civil Procedure 23.

## Numerosity and Ascertainability

16.     Although the exact number of Class Members is uncertain, the size of the Class can be estimated with reasonable precision, and the number is great enough that joinder is impracticable and disposition of the class members' claims in a class action is in the best interest of the parties and judicial economy. To date, approximately 482,000 vehicles identified as Class Vehicles have been sold in the United States. It is undetermined at this time the exact number of Class Vehicles sold or leased within the State of Nevada, but it is estimated that over 1,000 such vehicles were sold in Nevada.

## Typicality

17.     The claims of the representative Plaintiff and the relief sought herein are typical of the claims and relief which could be prayed for as to each member of the Class because Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Volkswagen. Plaintiff, like all Class Members, has been damaged by Volkswagen's misconduct because she has incurred losses relating to purchasing or leasing a Class Vehicle.  Further, the factual bases of Volkswagen's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

**Adequate Representation**

18.    Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of all members of the Class.

19.    Plaintiff's counsel has the experience, knowledge and resources to adequately and properly represent the interests of the Class.

20.    Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.  Neither Plaintiff nor his counsel has interests adverse to those of the Class.

**Predominance of Common Issues**

21.    There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members.   The answers to these common questions will advance resolution of the litigation as to all Class Members. These common legal and factual issues include, but may not be limited to:

a.    whether the Class Vehicles contained a defeat device and emitted unlawful levels of pollutants under normal operation;

b.    whether Volkswagen knew or should have known about the defeat device and emission levels in the Class Vehicles;

c.    whether the true nature of the Class Vehicles' performance, emissions levels, fuel economy, and the inclusion of the defeat device constitute material facts that reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

d.    whether Volkswagen made material misrepresentations regarding the Class Vehicles;

e.    whether Volkswagen had a duty to disclose the true nature of the Class Vehicles to Plaintiff and Class Members;

f.    whether Volkswagen omitted and failed to disclose material facts about the Class Vehicles;

g.    whether Volkswagen's concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to their detriment by purchasing and/or leasing the Class Vehicles;

h.    whether Plaintiff and Class Members are entitled to a declaratory judgement; and

i.    whether Plaintiff and Class Members are entitled to equitable relief including, but not limited to, a preliminary and/or permanent injunction.

### Superiority

22.    Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Volkswagen's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

23.    Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek

legal redress for Volkswagen's misconduct.  Absent a class action, Class Members will continue to incur damages, and Volkswagen's misconduct will continue without remedy.

24.    Class action treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.  Failure to treat the claims as a class action would also create a risk of inconsistent or varying adjudications with respect to individual members of the class.

25.    Volkswagen has acted in a uniform manner with respect to the Plaintiff and Class Members.

26.    Class-wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Volkswagen has acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to the Volkswagen's liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests.  Class-wide relief assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Volkswagen's discharge of their duties to perform corrective action regarding the Class Vehicles.

/ / /

/ / /

/ / /

# V.

## __GENERAL ALLEGATIONS__

27.    For over six years, Defendant has intentionally and systematically cheated its customers, lied to the Government, and misled the public about the efficacy of its four-cylinder diesel engine vehicles sold under the Volkswagen and Audi brands. Volkswagen has marketed its so-called "clean diesel" vehicles as high performing, fuel efficient, and environmentally-friendly. In truth, Volkswagen's clean diesel vehicles are anything but clean.

28.    Instead, the Class Vehicles, as defined in Paragraph 29 of this Class Action Complaint ("Complaint"), emit noxious pollutants at up to 40 times the legal limit allowed under federal and state law. In order to conceal this inconvenient truth from regulators and the public, Volkswagen installed a sophisticated software algorithm, or "defeat device," in the Class Vehicles that instructs them to cheat on emissions tests; that is, to engage full emissions controls only when undergoing official emissions testing.  At all other times, the emissions controls are de-activated, and the vehicles emit extremely high, and illegal, levels of pollutants.  "Truth in Engineering" is Audi's official slogan. Ironically, these Audis (and Volkswagens) were engineered to deceive.

29.    As used in this Complaint, the term "Class Vehicles" refers to Volkswagen and Audi vehicles sold in the United States with 4-cylinder, Type EA 189 diesel engines, which share a common, uniform, deceitful, and harmful design because they (a) emit high and illegal levels of pollutants in normal

operation; (b) are equipped with a defeat device enabling them to bypass emissions regulations; and (c) cannot deliver the advertised combination of low emissions, fuel economy, and high performance for which they were marketed and advertised.

The Class Vehicles include at least the following makes and model years:

- 2009 to 2015 Volkswagen Jetta
- 2009 to 2014 Volkswagen Jetta SportWagen
- 2012 to 2015 Volkswagen Beetle
- 2012 to 2015 Volkswagen Beetle Convertible
- 2010 to 2015 Volkswagen Golf
- 2015 Volkswagen Golf SportWagen
- 2012 to 2015 Volkswagen Passat
- 2010 to 2015 Audi A3

30. Volkswagen has admitted that the defeat device was present in approximately 482,000 Class Vehicles sold in the United States, and more than 11 million vehicles sold worldwide. The number of Class Vehicles sold in Nevada remains undetermined at this time, but it is estimated to be over 1,000.

31. This case arises from Volkswagen's unprecedented and, until recently, successful efforts to cheat consumers, deceive the public, and bypass federal and state regulations.

**A.    Volkswagen Markets The Class Vehicles As High-Performance, Eco-Friendly, And Fuel-Efficient Diesel Vehicles**

32. Diesel vehicles are generally more fuel efficient and powerful than gasoline engines; however, diesel engines emit higher levels of certain pollutants as a by-product of combustion.

33.    Volkswagen attempted to address this problem with its so-called "clean diesel" vehicles. In an effort to make the Class Vehicles more marketable and induce consumers to pay premium prices, Volkswagen claimed its clean diesel TDI (turbocharged direct injection) engines combined fuel efficiency and high performance with low emissions. The combination of these three characteristics was the primary selling point for the Class Vehicles and was the centerpiece of Volkswagen's advertising efforts.

34.    Some advertisements, for example, specifically emphasized the low emissions and eco-friendliness of the vehicles. Others touted the combination of fuel efficiency and power. Yet others addressed the full package, implying that in contrast to the "stinky, smoky, and sluggish" diesel vehicles of old, Volkswagen's new diesel vehicles were clean, efficient, and powerful all at once.

35.    Volkswagen's efforts were a resounding success as Volkswagens and Audis became the highest selling diesel passenger cars in the United States.

36.    Unfortunately, the "clean diesel" vehicles were a sham. The truth of the manner in which these so-called "clean diesels" were designed and engineered was far stranger than the fiction under which Volkswagen sold them.

**B.    Volkswagen Lied To Its Consumers And Deliberately Concealed The Excessive And Unlawful Levels Of Pollution Emitted By Many Of Its So-Called "Clean Diesel" Vehicles**

37.   For years Volkswagen failed to disclose to the public and to consumers the presence of the defeat devices in the Class Vehicles and the true nature of the Class Vehicles' performance and emissions.

38.   On September 18, 2015, the U.S. Environmental Protection Agency ("EPA") slapped Volkswagen with a Notice of Violation ("NOV") of the federal Clean Air Act. The NOV explains that Volkswagen secretly installed a defeat device in certain of its diesel vehicles. As described above, the defeat device is a complex software algorithm which enables the vehicles to bypass emissions standards by engaging the emission control function only during official emissions testing and rendering it inoperative at all other times.

39.   In short, vehicles equipped with the defeat device software meet emissions standards during testing only; in normal operation they emit pollutants, including nitrogen oxides ("NOx"), at up to 40 times the legal limit.

40.   As noted in the EPA's official press release, NOx is dangerous:

NOx pollution contributes to nitrogen dioxide, ground-level ozone, and f i n e particulate matter. Exposure to these pollutants has been linked with a range of serious health effects, including increased asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital. Exposure to ozone and particulate matter has also been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory disease are particularly at risk for health effects of these pollutants.

41.   Unsurprisingly, defeat devices are illegal. Section 203(a)(3)(B) of the Clean Air Act expressly prohibits engine parts or components which "bypass, defeat, or render inoperative" the emission control system. Volkswagen's software did just that and, in so doing, deliberately violated the Clean Air Act.

42.    Volkswagen also violated the Clean Air Act by falsely certifying to the EPA that the Class Vehicles would meet applicable federal emission standards in order to obtain the EPA-issued Certificate of Conformity, which is required to sell vehicles in the United States.

C.    Once Caught, Volkswagen Admitted Its  Fraud

43. Volkswagen AG CEO Martin Winterkorn has already acknowledged the fraud and issued an apology for having "broken the trust of our customers and the public." Winterkorn subsequently resigned his position on September 23, 2015.

44.    Similarly, Volkswagen Group of America, Inc.'s Chief Executive Officer, Michael Horn, conceded that Volkswagen "was dishonest with the EPA, and the California Air Resources Board, and with all of you." He went on to admit that Volkswagen "totally screwed up" and that it "must fix the  cars."

D.    Volkswagen Has Reaped Considerable Profit From its Fraud

45.    Volkswagen charged premiums of several thousands of dollars for the Clean Diesel models of the Class Vehicles. These premium prices are represented in the chart below and reflect the value consumers placed on the advertised features of the Clean Diesel vehicles and paid to obtain, and which Volkswagen promised to all, but delivered to no one:

| Clean Diesel Price Premium | | | | |
|---|---|---|---|---|
| Model | Base | Mid-Level | Top-Level | Average |
| VW Jetta | $2,860.00 | $1,570.00 | $1,030.00 | $1,820.00 |
| VW SportWagen | $5,570.00 | $1,680.00 | $0.00 | $2,416.67 |
| VW Golf | $2,400.00 | $1,000.00 | $1,000.00 | $1,466.67 |
| VW Golf | $2,950.00 | $1,000.00 | $1,000.00 | $1,650.00 |

| | | | | |
|---|---|---|---|---|
| SportWagen | | | | |
| VW Beetle | $4,635.00 | $4,920.00 | $0.00 | $3,185.00 |
| VW Beetle Convertible | $4,080.00 | $530.00 | $700.00 | $1,770.00 |
| VW Passat | $5,755.00 | $2,845.00 | $2,135.00 | $3,578.33 |
| Audi A3 | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 |
| **Average** | *$3,818.75* | *$1,980.63* | *$1,020.63* | *$2,273.33* |

46.    Had Volkswagen revealed the truth about the Class Vehicles, eco-conscious consumers like Plaintiff would likely have taken their business to other automobile manufacturers.

E.    Plaintiff and Class Members Have Suffered Significant Harm As A Result Of Volkswagen's Unlawful Actions

47.    Volkswagen will not be able to adequately fix the vehicles. The EPA has ordered Volkswagen to bring the Class Vehicles into compliance with the emissions standards of the Clean Air Act, but doing so will materially compromise the vehicles' performance and/or fuel efficiency. Even if Volkswagen is able to make the Class Vehicles EPA-compliant through a retrofit, the vehicles will no longer perform as previously represented to the public and consumers, and Plaintiff and Class Members will be deprived of the benefits Volkswagen promised and for which they bargained when they purchased or leased the Class Vehicles.

48.    As a result, the Class Vehicles do not function as reasonable consumers expect, and have lost considerable value. Moreover, Plaintiff and Class Members will incur additional expenses at the fuel pump as a result of the decreased fuel efficiency.

/ / /

49.     Volkswagen failed to disclose these material facts to the public and to consumers.  Had Plaintiff and Class Members known of the defect at the time they decided to purchase or lease the Class Vehicles, they would have declined to purchase or lease the vehicles, or would have paid considerably less than they did.

50.     In sum, Volkswagen's deliberate deception has caused significant harm to Plaintiff, Class Members, and the general public.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

51.     Volkswagen concealed its fraud from Plaintiff and the Class. Upon information and belief, Volkswagen has known of the defeat devices installed in the Class Vehicles since at least 2009, when it began installing them, and has intentionally concealed from or failed to notify Plaintiff, Class Members, and the public of the defeat devices and the true emissions and performance of the Class Vehicles.

52.     The defeat device is a complicated software algorithm designed only to detect emissions testing conditions in order to selectively initiate the full emissions controls and trick the emissions test. The defeat device could only have been installed intentionally by Volkswagen, and the only purpose of the code is to deceive regulators, consumers, and the public.

/ / /

/ / /

53.    Despite knowing about the defeat device and unlawful emissions, Volkswagen did not acknowledge the problem until after the EPA issued its NOV on September 18, 2015.

54.    Any applicable statute of limitation has, therefore, been tolled by Volkswagen's knowledge and active concealment of the facts alleged herein.

**Estoppel**

55.    Volkswagen was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the vehicles. Instead, it actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiff and Class Members reasonably relied upon Volkswagen's knowing and affirmative misrepresentations and/or active concealment of these facts. Based upon the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

**Discovery Rule**

56.    The causes of action alleged herein did not accrue until Plaintiff and Class Members discovered that the Class Vehicles had defeat devices installed and were not delivering the low emissions that were advertised and warranted by Volkswagen.

57.    Plaintiff and Class Members had no realistic ability to discover the presence of the defeat devices, or to otherwise learn of the fraud, until it was

/ / /

discovered by the EPA and California Air Resources Board and revealed to the public on September 18, 2015.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## Fraud/Misrepresentation

58.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

59.    Plaintiff brings this claim for fraud and misrepresentation on behalf of the Class.

60.    Volkswagen engaged in both speaking and silent fraud, and in fraudulent and misrepresentative conduct, throughout the Class Period. As described   above, Volkswagen's conduct defrauded Plaintiff and Class Members, intending and leading them to believe through affirmative and negligent misrepresentations, omissions, suppression, and concealments of material fact, that the Class Vehicles, marketed by Volkswagen as "clean diesel" vehicles, possessed important characteristics that they in fact did not possess - namely, the touted combination of low emissions, high performance, and fuel economy - and inducing their purchase and/or lease of a Class Vehicle.

61.    Volkswagen's intentional and negligent material misrepresentations included,  among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Class Vehicles (a) were clean and

eco-friendly  and (b) combined low emissions with high performance and strong fuel economy.

62.     The foregoing misrepresentations were uniform across all Class Members.  The same advertisements were shown to all members of the public generally, and the same marketing materials were distributed to customers and potential customers, and all of the materials contained the same standardized statements relating to the Class Vehicles' environmental friendliness, performance, and fuel economy.

63.     These representations directly contradicted the true nature and hidden design of the Class Vehicles and their actual emissions when operating under normal circumstances. Volkswagen knew or should have known the representations were false and misleading when it made them, and thereby intended to defraud persons and entities purchasing and/or leasing Class Vehicles.

64.     Volkswagen also had a duty to disclose, rather than conceal and suppress, the full scope and extent of the emissions deception because:

a.     Volkswagen had exclusive knowledge of the actual emissions in the Class Vehicles and concealment thereof;

b.     The details regarding the actual emissions in the Class Vehicles and concealment thereof were known and/or accessible only to Volkswagen;

c.     Volkswagen knew that Plaintiff and Class Members did not know and could not reasonably discover the actual emissions in the Class Vehicles and concealment thereof; and

d.     Volkswagen made general representations about the qualities of the Class Vehicles, including statements about their performance, fuel economy, and emissions, which were misleading, deceptive, and incomplete without the disclosure of the fact that Volkswagen secretly designed and installed defeat device software on the Class Vehicles that was intended to conceal the vehicles' exceedingly high and illegal emission levels from governments, consumers, and the public.

65.    Volkswagen's concealment was likewise uniform across all Class Members because Volkswagen concealed from everyone other than itself, including potential customers and regulators, the true facts relating to the emission levels of the Class Vehicles.

66.    Volkswagen's intentional and negligent misrepresentations and omissions were material because they would affect a reasonable consumer's decision to purchase or lease a Class Vehicle. Consumers paid a premium for the clean diesel Class Vehicles precisely because they supposedly offered low emissions and fuel economy without sacrificing performance. Volkswagen's conduct, misrepresentations, omissions, concealment, and suppression undermined the core value proposition that induced consumers to purchase or lease the Class Vehicles, and directly affect both the quality and worth of the vehicles.

67.    Volkswagen's intentionally deceptive conduct - its silent fraud and fraud by concealment - likewise induced the Class Vehicles' purchase or lease by Plaintiff and Class Members, and the resulting harm and damage to them.

68.    Plaintiff relied upon Volkswagen's misrepresentations and concealment of the true facts. Class Members are presumed to have relied upon Volkswagen's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's purchase and/or lease of the Class Vehicles.

69.    As a result of Volkswagen's inducements, Plaintiff and Class Members have sustained significant damage including, but not limited to, lost vehicle value and diminished vehicle quality and utility. If Plaintiff and Class Members had known about the defeat device and the unlawful emissions at the time of acquisition, they would not have acquired the Class Vehicles. Indeed, the Class Vehicles could not have been marketed, sold or leased to any reasonable consumer had existence of the defeat device been disclosed.  Volkswagen is, therefore, liable to Plaintiff and Class Members in an amount to be proven at trial.

70.    Volkswagen intentionally designed and engineered its "clean diesel" vehicles to deceive and cheat regulators and its customers. Volkswagen touted the performance and environmental virtues of these vehicles, while concealing and suppressing the truth about them for the purpose of inducing Plaintiff and the Class Members to buy or lease them.  Volkswagen's fraud and misrepresentations caused both the purchase and/or the lease, and the resulting harm. In order to undo this harm, Volkswagen must repair or remediate the vehicles so that the vehicles deliver everything Volkswagen promised when it sold or leased the Class Vehicles, or undertake to buy or "lease" them back from Class

Members on terms that are just and equitable under principles of rescission, restitution, and benefit of the bargain.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

71.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

72.     Plaintiff brings this claim for unjust enrichment on behalf of the Class.

73.     Volkswagen has been unjustly enriched because it intentionally sold or leased the Class Vehicles with defeat devices which were intended to mask the fact that the Class Vehicles did not comply with applicable automobile exhaust regulations and could not deliver the combination of low emissions, high performance, and fuel economy promised to consumers.

74.     Plaintiff and Class Members conferred a benefit on Volkswagen by purchasing or leasing, and paying a premium for, the Class Vehicles.

75.     When purchasing or leasing their vehicles, Plaintiff and Class Members reasonably believed that the Class Vehicles complied with applicable environmental regulations and, if properly tested in accordance with EPA mileage standards, would achieve the mileage stated on the window sticker of the vehicles. They also believed that the Class Vehicles would perform as advertised and warranted.

76.     Plaintiff and Class Members got less than what they paid for because the Class Vehicles did not comply with applicable environmental regulations and the EPA mileage stated on the sticker was not usable for comparison purposes for other vehicles.

Moreover, the Class Vehicles did not deliver the promised combination of low emissions, high performance, and fuel economy that Plaintiff and Class Members expected.

77.    Volkswagen knows of and appreciates the benefit conferred by Plaintiff and Class Members and has retained that benefit notwithstanding its knowledge that the benefit is unjust.

78.    The foregoing did not occur by happenstance or conditions out of Volkswagen's control. In fact, the Class Vehicles were deliberately designed to comply with environmental regulations only when being tested, and were known and intended by Volkswagen to <u>not</u> comply with applicable regulations under ordinary driving conditions.

79.    Therefore, Volkswagen should be required to disgorge the unjust enrichment.

**THIRD CLAIM FOR RELIEF**

**Breach of Express Warranty**

80.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

81.    Plaintiff brings this claim for breach of express warranty on behalf of the Class.

82.    By advertising the "green" and "clean" qualities of its diesel engines, Volkswagen expressly warranted to Plaintiff and Class Members that the vehicles at least complied with all applicable laws and regulations relating to

exhaust emissions, as it would be impossible for an automobile to be "green" if it emitted more pollutants than were allowed by applicable environmental laws and regulations.

83.    Moreover, by advertising the low emissions in combination with statements regarding the performance, torque, and fuel efficiency, Volkswagen warranted to persons purchasing and/or leasing the Class Vehicles that the vehicles would exhibit this combination of characteristics.   Such statements became the basis of the bargain for Plaintiff and other Class Members because such statements are among the facts a reasonable consumer would consider material in the purchase or lease of a vehicle.

84.    In fact, in ordinary driving conditions, the Class Vehicles did not comply with applicable environmental regulations and, instead, emitted between 10 and 40 times the amount of pollutants allowed during normal operation. As such, it was unlawful for Volkswagen to sell or lease the vehicles to the public.

85.    In addition, Volkswagen stated that the vehicles achieved certain fuel economy when tested in accordance with applicable EPA regulations. Those statements created an express warranty that the vehicle achieved the stated fuel efficiency, allowing consumers to make apples-to-apples comparisons with other vehicles.

86.    Testing under EPA regulations presupposes that the vehicles comply with all laws and regulations applicable to automobiles, including environmental regulations.

87.    In fact, had the Class Vehicles been tested in accordance with EPA fuel efficiency standards while also complying with pollution regulations, they would have achieved significantly lower fuel efficiency than was stated on the EPA mileage sticker on the vehicle.

88.    In addition, the Class Vehicles are not adequately labeled because they misstate that the Class Vehicles comply with EPA regulations, and the stated gas mileage for comparison purposes was not achieved by testing in accordance with EPA testing procedures.

89.    As a result of the foregoing breaches of express warranty, Plaintiff and Class Members have been damaged because they purchased or leased vehicles that were unlawfully sold, did not comply with government regulations, did not perform as promised, and were less valuable than what was paid for them.

## FOURTH CLAIM FOR RELIEF

**Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* -Implied Warranty**

90.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

91.    Plaintiff brings this claim for violation of the Magnuson-Moss Warranty Act,   15 U.S.C. § 2301 et seq. (the "Act") on behalf of the Class.

92.     The Class Vehicles are "consumer products" within the meaning of the Act, 15 U.S.C. § 2301(1).

93.     Plaintiff and Class Members are "consumers" within the meaning of the Act, 15 U.S.C. § 2301(3), because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

94.     Volkswagen is a "supplier" and "warrantor" within the meaning of the Act, 15 U.S.C. § 2301(4)-(5).

95.     Section 2310(d)(1) of the Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

96.     Volkswagen provided Plaintiff and the other Class Members with an implied warranty of merchantability in connection with the purchase or lease of the Class Vehicles that is an "implied warranty" within the meaning of the Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Volkswagen warranted that the Class Vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

97.     Volkswagen breached these implied warranties, as described in more detail above and is therefore liable to Plaintiff and the Class Members pursuant to 15 U.S.C. § 2310(d)(l).

98.    Any  efforts to limit the implied warranties in a manner that would exclude  coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit liability for the Class Vehicles is null and void.

99.    Plaintiff and the Class Members have had sufficient direct dealings with either Volkswagen or its agents (dealerships) to establish privity of contract.

100.    Nonetheless, privity is not required here because Plaintiff and Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers and, specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.  The warranty agreements were designed for and intended to benefit consumers.

101.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Volkswagen notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

102.    Plaintiff's individual claims place into controversy an amount equal to or exceeding $25.  The amount in controversy of this entire action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, acting individually and on behalf of Class Members, seeks all damages permitted by law, including diminution in value of his vehicle, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and Class Members are entitled to recover a sum equal to the

aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and Class Members in connection with the commencement and prosecution of this action.

103.    Further, Plaintiff and Class Members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

## FIFTH CLAIM FOR RELIEF

### Breach of Contract

104.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

105.    Plaintiff brings this claim for breach of contract on behalf of the Class.

Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the defect device and/or defective design as alleged herein, caused Plaintiff and members of the Class to purchase or lease their Class Vehicles.

106.    Absent those misrepresentations and omissions, Plaintiff and members of the Class would not have purchased or leased those Class Vehicles, would not have purchased or leased those Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the "Clean Diesel" engine system and the defect device.  Accordingly, Plaintiff and members of the Class overpaid for their Class Vehicles and did not receive the benefit of their bargain.

/ / /

107.    Each and every sale or lease of the Class Vehicles constitutes a contract between Volkswagen and the purchaser or leasee.    Volkswagen breached these contracts by selling or leasing Plaintiff and members of the Class defective Class Vehicles and by misrepresenting or failing to disclose the existence of the defect device, including information known to Volkswagen rendering each Class Vehicle less safe and non-complaint with EPA rules, standards and regulations, and thus less valuable than vehicles not equipped with "Clean Diesel" engine systems and defeat devices.

108.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and members of the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## SIXTH CLAIM FOR RELIEF

**Violation of Nevada Revised Statutes 598.0915(7), (9) & (15) and 598.0925(1)(a)**

109.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

110.    Plaintiff brings this claim for breach of contract on behalf of the Class.

111.    Volkswagen violated NRS 598.0915(7) by representing that the Class Vehicles for sale or lease were of a particular standard, quality or grade and Volkswagen knew or should have known that Class Vehicles were of another standard, quality or grade.

/ / /

112.    Volkswagen violated NRS 598.0915(9) by advertising the Class Vehicles with the intent not to sell or lease them as advertised.

113.    Volkswagen violated NRS 598.0915(15) by knowlingly making false representations in the sale or lease transactions of the Class Vehicles.

114.    Volkswagen violated NRS 598.0925(1)(a) by making an assertion of scientific, clinical or quantifiable fact in advertisements of the Class Vehicles which caused the Plaintiffs to believe that the assertions were true.

115.    Pursuant to NRS 598.099, Plaintiffs seek statutory damages equaling $5,000 for each violation Volkswagen committed.    In addition, Plaintiffs seek compensatory damages for the emotional distress of a garden variety nature Volkswagen imposed upon Plaintiffs.    As a direct and proximate result of Volkswagen's acts, Plaintiffs have been forced to retain the services of an attorney to bring this action.    As such, Plaintiffs are entitled an award of attorneys' fees and costs of this law suit as damages.

116.    Volkswagen's conduct was carried on with willful and conscious disregard for Plaintiffs' rights.    Volkswagen's conduct constitutes oppression, intentional misrepresentation, deceit, concealment of material facts done with the intention, implied or in fact, to deprive Plaintiffs of their legal rights.    Volkswagen's conduct was designed to oppress, injure, and/or constitutes malice and/or fraud within NRS 42.005.  Because of Volkswagen's wrongful conduct, as alleged herein, Plaintiffs are entitled to punitive or exemplary damages in an amount appropriate to punish or

deter Volkswagen from future similar acts, or to make an example of Volkswagen to deter others from similar conduct.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, requests the Court to enter judgment against Volkswagen, as follows:

A.    an order certifying the proposed Class, designating Plaintiff as the named representative of the Class, and designating the undersigned as Class Counsel;

B.    a declaration that Volkswagen is financially responsible for notifying Class Members about the true nature of the Class Vehicles;

C.    an order enjoining Volkswagen to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and directing Volkswagen to permanently, expeditiously, and completely repair the Class Vehicles;

D.    an order compelling Volkswagen to buy or "lease" back the Class Vehicles on fair and equitable terms;

E.    an award to Plaintiff and Class Members of compensatory, exemplary, punitive, and statutory penalties and damages, including interest, in an amount to be proven at trial;

F.    an award to Plaintiff and Class Members for the return of the purchase prices of the Class Vehicles, with interest from the time the money was

paid, for the reimbursement of the reasonable expenses occasioned by the sale or lease, for damages and for reasonable attorneys' fees;

G.    a declaration that the Volkswagen must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits received from the sale or lease of the Class Vehicles, and make full restitution to Plaintiff and Class Members;

H.    an award of attorneys' fees and costs, as allowed by law;

I.    an award of pre-judgment and post-judgment interest, as provided by law;

J.    leave to amend this Complaint to conform to the evidence produced at trial; and

K.    such other relief as this Court may deem appropriate under the circumstances.

### **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: October 13, 2015

Respectfully submitted by,

LYNCH, HOPPER, SALZANO & SMITH, LLP

By:    /s/  *Charles "Dee" Hopper*
        CHARLES "DEE" HOPPER, ESQ. (#6346)
        1640 Alta Drive, Suite 11
        Las Vegas, Nevada 89106
        (702) 868-1115
        Attorneys for Plaintiffs